## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JOSEPH FARYNIARZ,

              Plaintiff,

  v.

JOSE E. RAMIREZ, JR CHEM, LLC, and
OBAGI MEDICAL PRODUCTS, INC.

           Defendants.

3:13-CV-01064 (CSH)

**DECEMBER 1, 2014**

## RULING ON MOTION TO AMEND THE COMPLAINT
## AND MOTION FOR PREJUDGMENT ATTACHMENT

**HAIGHT,** Senior District Judge

       This case was dismissed on August 5, 2013, without prejudice, for lack of subject matter jurisdiction. *See* Docs. [13] and [16]. Plaintiff Joseph Faryniarz has since filed a motion to amend the complaint (Doc. #18) and proposed amended complaint, which asserts civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and patent infringement violations, 35 U.S.C. § 271, as the bases for this Court's subject matter jurisdiction. He has also filed a motion for prejudgment attachment (Doc. #25) pursuant to Federal Rule of Civil Procedure 64, and Connecticut General Statutes §§ 52-278a, *et seq*. This Ruling resolves both motions.

### I.  BACKGROUND

#### A.    **Introduction**

       The factual background in this Part is derived from the allegations in Plaintiff's original complaint, Doc. [1], which are substantially reiterated in his proposed amended complaint, Doc. [18-1]. For the purposes of this Ruling, the Court accepts as true the well-pleaded factual allegations of Plaintiff's complaint. The Court does not credit conclusory allegations or legal conclusions, with

which these pleadings abound, as factual allegations.  They are considered for the purpose of discerning the nature of Plaintiff's claims, so that the viability of those claims as pleaded may be evaluated under the governing law.

**B.**   **Factual Background as Pleaded by Plaintiff**

Plaintiff and defendant Jose E. Ramirez ("Ramirez"), entered into a business relationship to develop patentable  chemical technologies.   Doc. [1] at 12.  Under the terms of their agreement, which at its inception was not reduced to writing, Plaintiff was to be mainly responsible for inventing patentable chemical technologies, while Ramirez would handle business concerns, including negotiations with defendant Obagi Medical Products, Inc. ("Obagi") concerning development of those technologies.  *Id.* at 10, 12.  The parties agreed to share their profits equally, and for the sake of simplicity and in recognition of their joint efforts, to alternate their names as primary and co-inventor when filing applications with the United States Patent and Trademark Office ("USPTO").  *Id.* at 11.  The parties also agreed that Plaintiff was to be paid $100,000 a year in recognition of his services as consultant to defendant, JR Chem, LLC, a company formed by Ramirez.  *Id.*

On January 1, 2005, Ramirez and/or JR Chem, LLC, entered into a five year product development contract with Obagi.  *Id.* at 13.  Under the product development contract, Obagi agreed to fund the development and patenting costs for the chemical technologies produced by Plaintiff.  The development contract also provided that Plaintiff and Ramirez,  through JR Chem, LLC, would be paid a royalty from Obagi's sale of Plaintiff's licensed technology.  *Id.*

Plaintiff continued to develop chemical technologies pursuant to the development agreement with Obagi.  In light of the oral contract between Plaintiff and Ramirez, Plaintiff assigned the intellectual property rights for the chemical technologies to JR Chem, LLC.  *Id.* at 15.  In March

2

2006, JR Chem, LLC began to prepare and file patent applications with the USPTO. *Id.*

In October 2006, Ramirez presented Plaintiff with a document he had prepared, which listed all the chemical technologies they had developed, and which stated in writing some of the terms of their oral agreement, including a provision that the parties would share equally any royalty payments from the licensed technology. *Id.* at 17. Plaintiff and Ramirez signed that agreement on October 6, 2006. Doc. [1], Ex. A.

By 2008, the relationship between Plaintiff and Ramirez had begun to deteriorate. Plaintiff discovered that Ramirez had not been strictly adhering to their agreement to alternate the name of primary inventor on the patent applications for the chemical technologies the parties had developed. *Id.* at 19. Plaintiff also noticed that Ramirez was becoming increasingly secretive about his business dealings, was sharing less information with Plaintiff, and was often complaining about being taken advantage of by Obagi. *Id.* at 20. Eventually, Ramirez stopped paying Plaintiff his portion of the royalty payments. *Id.* at 25. This lawsuit followed.

On July 26, 2013, Plaintiff filed his verified complaint (Doc. #1) and a motion for temporary restraining order and preliminary and permanent injunction ("motion for injunctive relief") (Doc. #2) pursuant to Federal Rule of Civil Procedure 65, requesting the Court to enjoin Ramirez and JR Chem, LLC, from, *inter alia*, "[d]isbursing, converting, spending, removing, or otherwise disposing of any monies received as royalty or licensing fees related to the chemical technologies described in [P]laintiff's complaint," and "[f]iling any new patent applications based upon [P]laintiff's research or intellectual property." Doc. [2] at ¶ 1. The complaint alleged diversity of citizenship as the sole source of subject matter jurisdiction in this federal district court.

After hearing arguments and testimony on Plaintiff's injunction motion on August 1, 2013,

the Court delivered an oral ruling which dismissed the case, without prejudice, for lack of subject matter jurisdiction, and consequently denied Plaintiff's motion for injunctive relief.  As reiterated in a written Order issued that same day, the Court concluded "that Plaintiff failed to establish with the requisite degree of certitude that complete diversity of citizenship exists between the parties." Doc. [13].  The Clerk entered judgment dismissing the case for lack of subject matter jurisdiction on August 5, 2013.  Doc. [16].

Plaintiff subsequently filed a motion for leave to amend the complaint  (Doc. #18) pursuant to Rule 15(a), Federal Rules of Civil Procedure, alleging "violations of federal law making diversity moot and jurisdiction proper in this court."[1]  While Plaintiff's motion for leave to amend the complaint was pending, Plaintiff filed the instant motion for prejudgment attachment (Doc. #25) pursuant to Rule 64 and Connecticut General Statutes §§ 52-278a, *et seq*.  Plaintiff seeks a court order  "attaching the real and personal property of defendants Ramirez and JR Chem, LLC," and directing garnishment of accounts owned by Obagi "and any and all third parties" containing "monies due" from the licensing or sale of "the intellectual property at issue." Doc. [25] at 2.

## II.  DISCUSSION

### A.    Threshold Questions

Although the briefs of counsel do not discuss the issue, threshold questions arise as to whether Plaintiff is entitled to file a motion to amend his complaint under Rule 15, and whether this Court is authorized to entertain it.  The text of Rule 15 and the accompanying Advisory Committee

---

[1]Specifically, the proposed amended complaint alleges: "racketeering conspiracy" in violation of 18 U.S.C. §§ 1962(d) and 1964 (Count I); "substantive racketeering" in violation of the same (Count II); and "patent infringement" in violation of 35 U.S.C § 271(a) (Count III).  Counts IV through XII sound in violations of common law or the Connecticut General Statutes.

Notes make it clear that Rule 15 practice is contemplated to take place only in the context of a pending case.  When the Plaintiff filed his Rule 15 motion to amend his complaint, there was no pending case.  Judgment had previously been entered on August 5, 2013, dismissing the case.  Doc. [16].

"A party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  Where, as here, "a party files an amended complaint after final judgment has been entered on its original complaint, without bringing motion under Rule 60(b) or 59(e) . . . the Second Circuit treats the Rule 15(a) . . . motion as a simultaneous motion to vacate the judgment on the original complaint." *F.D.I.C. v. Weise Apartments*, 192 F.R.D. 100, 104 (S.D.N.Y. 2000) (citing *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244–45 (2d Cir.1991)).

Federal Rule of Civil Procedure 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;  (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged;  it is based on an earlier judgment that has been reversed or vacated;  or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Absent any suggestion that subsection (1) through (5) are relevant here, the only conceivable basis on which the Court may relieve Plaintiff from its final judgment is subsection (6), which authorizes a district court to grant relief to a moving party for "any other reason that

justifies relief."[2]  Fed. R. Civ. P. 60(b)(6).  Relief under Rule 60(b)(6), however, can only be granted in "exceptional circumstances."  *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1142 (2d Cir.1994) (citation omitted).  There is no showing of exceptional circumstances in the case at bar which would warrant the extraordinary relief contemplated by Rule 60(b)(6).

Therefore, ordinarily "it would be contradictory to entertain a motion to amend the complaint" after a judgment has dismissed the action.  *Nat'l Petrochemical Co. of Iran*, 930 F.2d at 245.  The Second Circuit in *National Petrochemical Company* has nevertheless said in dicta that "in view of the provision of [R]ule 15(a) that 'leave [to amend] shall be freely given when justice so requires,' it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment."  *Id.*  (citing *Foman v. Davis*, 371 U.S. 178, 222 (1962)); *see also Ruotolo*, 514 F.3d at 191.

The Second Circuit did not elaborate in *National Petrochemical Company* what would constitute a "proper case" for taking a proposed amendment into account; however, it has elsewhere stated that "[a]n argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief . . . nor does the failure to marshal all known facts in opposition to a summary judgment motion."  *Paddington Partners,* 34 F.3d at 1147 (internal citations omitted).

Plaintiff's motion to amend his complaint suggests an argument based on hindsight.  Had he

---

[2]Although a post-judgment motion to amend the complaint may also be treated as a motion pursuant to Rule 59 to alter or amend the judgment, that Rule is not relevant here.  Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed not later than 28 days after the entry of the judgment."  To the extent it may be construed as a motion to alter or amend the judgment pursuant to Rule 59(e), Plaintiff's motion amend his complaint was filed on October 9, 2013, which is more than 28 days after judgment entered on August 5, 2013.

included an alternative basis for this Court's subject matter jurisdiction in his original complaint by asserting the federal claims he presses now, the case might not have been dismissed. But lack of foresight is not a basis on which to grant a Rule 60(b) motion. To the extent Plaintiff's motion to amend his complaint pursuant to Rule 15(a) operates as such a motion, it may arguably be denied in the absence of "exceptional circumstances" warranting vacation of the Court's final judgment.

The Second Circuit's suggestion, however, that "it might be appropriate in a proper case to take into account the nature of the proposed amendment" in light of the fact that "leave to [amend] shall be freely given" implies that the merits of the proposed amendment should factor into the Court's calculus in certain circumstances. *Nat'l Petrochemical Co. of Iran*, 930 F.2d at 245; *see also Ruotolo*, 514 F.3d at 191 (concluding that court properly denied post-judgment motion to amend, but continuing on to consider whether court had abused its discretion in denying the motion). More recently, in *Williams v. Citigroup, Inc.*, 659 F.3d 208 (2d. Cir. 2011), the Second Circuit ruled that the district court abused its discretion by denying plaintiff's post-judgment motion to amend her complaint without first considering whether the proposed amendments were futile. *Id.* at 214. The Circuit noted that the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962), was "[p]articularly instructive," because in that case the Supreme Court reversed the district court's decision denying a *post-judgment* motion to amend a complaint. *Williams*, 659 F.3d at 213. The Circuit acknowledged that "Rule 15's liberality must be tempered with considerations of finality," *id.,* at 213, but noted that the "*Foman* holding," which affirmed the principle that leave to amend should be freely given, "cannot be reconciled with the proposition that the liberal spirt of Rule 15 necessarily dissolves as soon as judgment is entered." *Id.* at 214.

Based on the authority cited in the foregoing discussion, including the Second Circuit's more

recent holding in *Williams* expressly directing the district court to consider the nature of proposed amendments filed post-judgment, the Court concludes that it would be improper to exalt the finality of the judgment over the liberal right to replead, particularly in these circumstances, where the case has not progressed beyond the pleading stage. The Court therefore refrains from denying the instant motion until it has considered the merits of the claims Plaintiff asserts in his proposed amended complaint.

**B.**     **Motion to Amend the Complaint**

The discussion in Part II.B. of this Ruling assumes, contrary to fact, that Plaintiff's motion to amend his complaint under Rule 15(a) was filed while the case was still pending.

On that assumption, Plaintiff seeks leave to amend his complaint to include violations of federal law, specifically: "racketeering conspiracy" in violation of 18 U.S.C. §§ 1962(d) and 1964(Count One); "substantive racketeering" in violation of 18 U.S.C. §§ 1962(c) and 1964 (Count Two); and "patent infringement" in violation of 35 U.S.C § 271(a) (Count Three). *See* Doc. [18-1] at ¶¶ 44-58. The proposed amended complaint also contains Counts Four through Twelve, which allege various claims under Connecticut statutory or common law. Plaintiff also seeks by this amendment to add an additional defendant called "JR Chemical, Inc.," which he states is a "successor in interest" to defendant JR Chem, LLC, and two other limited liability companies affiliated with Ramirez but not named as defendants, "Jose E. Ramirez, Ph.D., LLC," and "DFR Services, LLC." *Id.* at ¶ 7.

The deadline by which Plaintiff was able to amend his complaint as a matter of course under

the Federal Rules of Civil Procedure has long since passed.[3]  Consequently, the present motion to amend is governed by Rule 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice requires."[4]  Defendants Ramirez and JR Chem, LLC, object to Plaintiff's motion to amend the complaint, arguing that Plaintiff "proposes to recast his complaint to claim federal question jurisdiction . . . by dressing up a simple breach of contract case as a civil Racketeer ced and Corrupt Organizations Act . . . and patent infringement case."[5]  Doc. [21] at 2.  In light of that objection, Plaintiff may only amend his complaint with "the court's leave."  Fed. R. Civ. P. 15(a)(2).

The applicable principles with respect to amendment of pleadings are well established.  A

_____

[3]Rule 15(a), Fed. R. Civ. P., provides:

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

[4]Where, as here, a proposed amended "would add new parties, the motion is technically governed by Federal Rule of Civil Procedure 21, which provides that 'the court may at any time, on just terms, add or drop a party,' rather than Rule 15(a)." *Duling v. Gristede's Operating Corp.,* 265 F.R.D. 91, 96-97 (S.D.N.Y. Jan. 8, 2010) (quoting Fed.R.Civ.P. 21) (additional citation omitted); *see also Lawrence v. Starbucks Corp.,* No. 08 cv 3734 (JCF), 2009 WL 4794247, *2 (S.D.N.Y. Dec. 10, 2009) ("Where, as here, a proposed amendment adds new parties, the propriety of amendment is governed by Rule 21 of the Federal Rules of Civil Procedure.").  However, the "same standard of liberality" applies under either Rule.  *Duling,* 265 F.R.D. at 96-97 (quoting *FTD Corp. v. Banker's Trust Co.,* 954 F. Supp. 106, 109 (S.D.N.Y.1997)); *Lawrence,* 2009 WL 4794247, *2-3 (quoting *Soler v. G & U, Inc.,* 86 F.R.D. 524, 528 (S.D.N.Y.1980)).

[5]Obagi does not object to Plaintiff's proposed amended complaint as no appearance has been filed on behalf of Obagi.

court should deny leave to amend only upon "undue delay, bad faith or dilatory motive on the part of the [moving party], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the [non-moving parties,] . . . [or] futility." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005) ("A Rule 15(a) motion should be denied only for reasons as undue delay, bad faith, futility of the amendment, and perhaps the most important, the resulting prejudice to the opposing party.") (internal quotations and citation omitted).   Plaintiff's motion to amend was filed roughly three months after the Court dismissed this case, without prejudice, for lack of subject matter jurisdiction. The record therefore does not support a finding of undue delay or dilatory motive.  Nor is there any suggestion that Plaintiff has acted in bad-faith by filing the instant motion.  Defendants have also not objected to the instant motion on prejudice grounds.  The Court therefore considers only whether it is futile to amend the complaint.

An amendment is considered "futile" if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank–New York,* 494 F.2d 1334, 1338 (2d Cir.1974).  *See also Wilson–Richardson v. Regional Transit Serv., Inc.,* 948 F.Supp.2d 300, 306 (W.D.N.Y.2013) ("I conclude that no amendment of the complaint would be sufficient to salvage claims which are undisputedly unexhausted and untimely, and/or over which the Court lacks jurisdiction").  For example, a proposed amendment would be futile if it destroyed the Court's subject matter jurisdiction, failed to state a claim, or asserted claims which are time-barred by the relevant statutes of limitation. *Taurus B, LLC v. Esserman*, No. 3:14cv715 (CSH) 2014 WL 4494398, at *2 (D. Conn. Sept. 12, 2014).

The Court will therefore consider whether Plaintiff's proposed federal causes of action asserted in Counts One, Two and Three, would withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure12(b)(6). *Martin v. Dickson*, 100 Fed. Appx. 14, 16 (2d Cir. 2004). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

If the Court determines that the federal causes of action would not survive a motion to dismiss, the Court will conclude that the motion to amend would be denied in the absence of a remaining claim invoking the Court's original subject matter jurisdiction. In that event, the Court would not exercise jurisdiction over Plaintiff's state law claims. *See Nowalk v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996) ("While the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, *see* 28 U.S.C. § 1367(c)(3), it cannot exercise supplemental jurisdiction unless there is first a proper basis for original jurisdiction."); *see also In re Joint Easter and Southern Dist. Asbestos Litig*, 14 F.3d 726, 730 n.2 (2d Cir. 1993); *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992). Alternatively, it is generally held that when all federal claims are dismissed, district courts should decline to exercise jurisdiction over state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 716 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

11

**C.**   **Racketeering in violation of 18 U.S.C. § 1962**

    **1.**   **Additional Background as Pleaded by Plaintiff**

Plaintiff seeks to charge Defendants in the amended complaint with a substantive civil RICO violation, 18 U.S.C. § 1962(c) (in Count Two), and a conspiracy to commit such a violation, 18 U.S.C. § 1962(d) (in Count One).

The proposed amended complaint alleges that "[b]egining as early as 2004" Defendants Ramirez and JR Chem, LLC, together with proposed defendant JR Chemical, Inc. and other "co-conspirators, willfully, knowingly and unlawfully did combine, conspire, confederate and agree to conduct the affairs of the enterprises . . . through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962 and 1964." Doc. [18-1] at ¶ 46.

The "enterprises" referred to in that allegation are defendant JR Chem, LLC, proposed defendant JR Chemical, Inc., and two limited liability companies called Jose E. Ramirez, Ph.D., LLC, and DFR Services, LLC. *Id.* at ¶¶ 10-14. The known "co-conspirators" contemplated in that allegation are Ramirez's wife, son, daughter, and daughter-in-law, who Plaintiff avers are members and/or officers or proposed defendant JR. Chemical, Inc., or non-party DFR Services, LLC. *Id.* at ¶ 9. The proposed pleading alleges that the "enterprises . . . together with individual known and unknown . . . including . . . Ramirez . . . and the 'co-conspirators' . . . constitute an enterprise," referred to collectively in the proposed pleading as the "'Ramirez Enterprise.'" Doc. [18-1] at ¶ 14.

Plaintiff alleges that Ramirez, JR Chem, LLC, and proposed defendant JR Chemical, Inc.:

> together with others known and unknown, would and did devise a scheme and artifice to defraud plaintiff . . . of money and other valuable property, by inducing [Plaintiff] to disclose to the defendants the exact nature of certain highly confidential, valuable, patentable information based upon contractual obligations, representations and promises made to plaintiff by the defendants, which the defendants

never intended to keep.

*Id.* at ¶ 47.  Plaintiff goes on to aver that "[i]n furtherance of said scheme and artifice to defraud," *id.* at ¶¶ 48-49, the defendants caused certain checks to be placed in the mail, and certain deposits to be made to bank accounts, by way of "interstate wire communication." *Id.* at ¶ 49.  The proposed pleading lists check and deposit amounts and the dates on which those checks or deposits were mailed or transmitted. *Id.* ¶¶ 48-49.  In addition, both civil RICO claims conclude with allegations that "[a]s a proximate and direct result of the aforementioned acts . . . the plaintiff has suffered harm and financial loss." *Id.* at ¶ ¶ 50 and 54.

### 2.   __RICO Elements__

Section 1962(c) of the RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  A RICO complaint must show: "(1) a violation of the RICO statute, 18 U.S.C.  § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (internal quotation marks omitted).  To state a substantiative civil RICO claim pursuant to section 1962(c), a plaintiff must adequately allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Although "[t]he true civil RICO plaintiff may well provide a laudatory societal service [by] supplementing the government's efforts to protect the general public and the common good from felonious conduct," "all too frequently plaintiffs attempt to mold their claims to the RICO form even though their injuries do not fall within those intended to be addressed by the Act." *Rosenson v.*

*Mordowitz*, No. 11 cv 6145 (JPO), 2012 WL 3631308, at *4 (S.D.N.Y. Aug. 23, 2012) (internal quotation marks omitted).  Consequently, courts have an obligation to carefully scrutinize a RICO claim to separate the meritorious from those which have merely recast common law fraud and breach of contract claims as violations of federal law.  *See Schmidt v. Fleet Bank,* 16 F. Supp.2d 340, 346 (S.D.N.Y.1998)) ("courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb."); *see also Cofacredit S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999) ("Mere common-law fraud does not constitute racketeering activity for RICO purposes."); *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000) ("garden variety fraud and breach of contract" claims are not RICO violations).

### 3.    Predicate Acts and Pattern of Racketeering Activity

A RICO pattern of racketeering activity "must consist of two or more predicate acts of racketeering." *Lundy v. Catholic Health Sys. of Long Island, Inc*., 711 F.3d 106, 119 (2d Cir. 2013). The Plaintiff must " show that the predicate acts are related, that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (citing *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989)).  The RICO statute defines "racketeering activity" to include a host of predicate criminal activities, including those which Plaintiff alleges here, namely mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343.  See 18 U.S.C. § 1961(1).

"Allegations merit particular scrutiny where the predicate acts are mail and wire fraud, and where the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion." *Lefkowitz v. Reissman*, No. 12 cv 8703 (RA), 2014 WL 925410,

at *4 (S.D.N.Y. Mar. 7, 2014) (quoting *Cohen v. Cohen*, No. 09 Civ. 10230 (WHP), 2014 WL 279555, at *5 (S.D.N.Y. Jan.27, 2014)) (alteration omitted). "Permitting plaintiffs to advance RICO claims in such cases 'would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions.'" *Id.* (quoting *Gross v. Waywell*, 628 F.Supp.2d 475, 483 (S.D.N.Y. 2009)).

A complaint alleging mail and wire fraud must show: (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme. *United States v. Gelb*, 700 F.2d 875, 879 (2d Cir.), *cert. denied*, 464 U.S. 853 (1983). To successfully plead a fraud claim, a plaintiff must specify the circumstances constituting fraud "with particularity." Fed. R. Civ. P. 9(b). This heightened standard constitutes an exception to the generally liberal scope of pleadings allowed by Rule 8 of the Federal Rules of Civil Procedure. *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citing *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)); *see also Moore v. PaineWebber*, *Inc.*, 189 F.3d 165, 173 (2d Cir. 1999). In addition, where there are multiple defendants, Rule 9(b) requires that the plaintiffs allege facts specifying each defendant's contribution to the fraud. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).

As noted earlier, Plaintiff claims that "defendants [named in the proposed amended

15

complaint] together with others known and unknown . . .devise[d] a scheme and artifice to defraud [him] of money an other valuable property, by inducing [him] to disclose to defendants the exact nature of certain highly confidential, valuable, patentable information based upon contractual obligations, representations and promises made to plaintiff by defendants, which the defendants never intended to keep."  Doc. [18-1] at ¶ 47.

The proposed pleading in this respect fails to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Although the pleading alleges "a scheme and artifice to defraud" Plaintiff, it does not explain what the "scheme" was, and how Plaintiff was defrauded by it.  *See, e.g., Gross*, 628 F. Supp. 2d at 495 (stating that Rule 9(b) and *Twombly's* plausibility test "demands greater specificity" in pleadings where mail and/or wire fraud are the predicate offenses); *Greenes v. Empire Blue Cross & Blue Shield*, No. 92cv8599, 1996 WL 640873, *5 (S.D.N.Y. Nov. 4, 1996) (wire and mail fraud allegations dismissed where they failed, *inter alia*, to "indicate precisely what statement or omissions were made in what documents and the manner in which they misled plaintiffs.").  The proposed pleading, for instance, indicates that "defendants to this count" (i.e., Ramirez, JR Chem, LLC, and JR Chemical, Inc.) "caused" certain payments to be "deposited" in the mail or "transmitted" by wire, but does not explain how Plaintiff was defrauded by those actions, let alone the role the "enterprises" played in the deception.  Doc. [18-1] ¶¶ 48-49.  It falls well short of the requirement to "inform each defendant of the nature of his [or its] alleged participation in the fraud.  *DiVittorio*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Moreover, apart from the proposed amended complaint's suggestion that Ramirez did not honor the terms of certain agreements, it does not identify specific statements that Plaintiff claims are fraudulent, or where, when, and by whom they were made.  *See*, *e.g.*, *Luce v. Edelstein*, 802 F.2d

49, 54 (2d Cir. 1986) (allegations, which fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the "particulars" required by Rule 9(b)); *Tavakoli–Azar v. Crescent Mgmt., Inc.*, No. 97cv0696, 1991 WL 1052016, *3 (S.D.N.Y. Nov. 18, 1999) (in order to satisfy particularity requirement, plaintiff must identify "precisely what statements were made in what documents or oral representations or what omissions were made.").  To the extent Ramirez's alleged failure to honor the terms of certain agreements with Plaintiff may be construed as fraudulent statements, those statements amount at worse to "a false promise by a party to a contract that he will fulfill the terms of an agreement," which does not constitute predicate criminal activity in this context. *Bridgestone/Firestone*, *Inc. v. Recovery Credit Servs.*, *Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996); *see also Lefkowitz v. Reissman*, No. 12 cv 8703 (RA), 2014 WL 925410, at *4 (S.D.N.Y. Mar. 7, 2014) ("[T]he statement upon which the fraud claim is predicated [in the RICO context] must be something more than a false promise by a party to a contract that he will fulfill the terms of the agreement.").   A plaintiff asserting fraud based on an counterparty's allegedly false promise to perform must: "(i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone*, *Inc.*, 98 F.3d at 20.

The Plaintiff in the case at bar does not satisfy any of these criteria.  He does not "seek special damages," nor does he seeks redress for injuries unrelated to the certain written and oral agreements giving rise to this litigation.  Rather, the proposed amended complaint's core allegations are that Ramirez and JR. Chem, LLC, have failed to perform *pursuant to those agreements*. *See e.g.,* Doc. [18-1] (proposed amended complaint) at ¶ 18 ("in reliance upon Ramirez's offer and

17

predictions, [Plaintiff] accepted [an] early retirement package and, in the final months of 2003, [Plaintiff] and Ramirez negotiated the terms of a business relationship"); at ¶ 25 ("Solely in reliance upon his oral contract with Ramirez to share equally royalties and licensing fees, and Ramirez's repeated representations affirming that agreement, [Plaintiff] regularly assigned intellectual property rights . . . to Ramirez and JR Chem, LLC"); at ¶ 31 ('Ramirez presented [Plaintiff] with a [written contract] "which stated . . . some of the terms of their earlier oral contracts, namely that the parties would share equally in 'any royalties'"); at ¶ 42 ("Ramirez has refused to pay to [Plaintiff] . . . his share of the Obagi royalty payment [and] additional royalty payments due to him").  Though styled as violations of federal law, Plaintiff's proposed civil RICO claims suggests in substance claims for breach of contract and common business tort.  *See Helios Int'l S.A.R.L. v. Cantamessa USA, Inc*., No. 12 cv 8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013 ("breach of contract [and common business torts] . . . cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal.")

Furthermore, the proposed amended complaint fails to indicate how the predicate criminal activities of wire and mail fraud are in furtherance of a scheme to defraud.  *See  Leung v. Law*, 387 F. Supp. 2d. 105, 117 (E.D.N.Y. 2005) (plaintiff bears the burden of pleading that particular uses of the wires by the defendants were incident to an essential element of the offense).  In fact, the proposed pleading, though listing the dates on which certain payments were made through mail or by wire, fails to indicate the person or entity sending the payments and how those payments are connected to a scheme to defraud Plaintiff.  One presumes, although it is not entirely clear, that the payments in questions constitute royalties paid by Obagi or another entity to Rameriz and JR Chem, LLC.  Even allowing Plaintiff that inference, the proposed amended complaint still fails to establish

how a fraudulent scheme deceiving Plaintiff was communicated by use of the mail and/or wires. *See Gross* 628 F. Supp. 2d at 495 (Plaintiff had not met Rule 9(b) standard where, *inter alia*, he failed to provide "information concerning [how] alleged fraudulent scheme constituting deception [was] communicated by use of the mail and/or wires"); *Leung v. Law*, 387 F. Supp. 2d. 105, 117 (E.D.N.Y. 2005) ("bare allegations that . . . defendants communicated with each other over the interstate wires during the time period in which they were operating a scheme to defraud [was] clearly insufficient"). As pled in the proposed pleading, the use of the mail and wires are unrelated to misrepresentations allegedly made to Plaintiff during contract negotiations, let alone part of "a scheme and artifice to defraud," within the meaning of the RICO statute. *See* 18 U.S.C §§ 1341 and 1343. Consequently, the proposed amended complaint fails to allege the specificity required in fraud pleadings and therefore does not establish that Ramirez, JR Chem, LLC and JR Chemical, Inc. engaged in a pattern of racketeering activity.

### 4.   Existence of an Enterprise

Plaintiff's proposed claim under section 1962(c) suffer from an additional deficiency: it fails to establish the operation of an enterprise within the meaning of the RICO statute. Section 1962(c) prohibits "any person employed by or associated with any enterprise . . . to conduct . . . such enterprise's affairs through a pattern of racketeering activity." An "enterprise" is defined as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The definition of enterprises includes legal entities, such as corporations, association or partnerships, and associations-in-fact." *See* 18 U.S.C. § 1961(4). "For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such

19

purposes." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013).

Here, Plaintiff alleges that the "Ramirez Enterprise" is an association in fact within the meaning of 18 U.S.C. § 1961(4).  This type of enterprise does not need to have a "hierarchical structure, a chain of command, or other business-like attributes," but it must have "an ascertainable structure." *Boyle v. United States*, 556 U.S. 938, 955 (2009).  An association-in-fact enterprise has an ascertainable structure when at least "three structural features" are present: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.  In determining whether a plaintiff has alleged the existence of an association-in-fact RICO enterprise, courts analyze the "hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, No. 14cv121 (JPO), 2014 WL 6077247, at *11 (S.D.N.Y. Nov. 14, 2014) (internal quotation marks omitted).  "A plaintiff's conclusory naming of a string of entities does not adequately allege an enterprise." *Id.* (internal quotation marks omitted).

The proposed pleading at bar does not adequately allege that the Ramirez Enterprise has an ascertainable structure.  Rather, it states in conclusory fashion that the "LLCS and corporations all share a common nucleus of ownership," and that the enterprise "consist of a closely knit group of entities and persons associated in fact." Doc. [18-1] at ¶ 47.  There are no well-pleaded allegations that its members share a common purpose, or that there are "agreements or mutual expectations of reciprocal behavior" among the parties establishing a relationship indicative of an ascertainable structure.  *In re Trilegiant Corp., Inc.,* No. 3:12cv00396 VLB, 2014 WL 1315244 (D. Conn. Mar. 28, 2014).

Nor does it "provide any information whatsoever regarding the Defendants' respective roles in the enterprise." *BWP Media USA Inc*., 2014 WL 6077247, at \*12.  On the contrary, the predicate criminal acts of mail and wire fraud are attributed to "the defendants to this count " as a group.  Doc. [18-1] at ¶¶ 48, 49.  Therefore, not only are the predicate criminal activities attributed generally to Ramirez, JR Chem LLC, and JR. Chem, Inc. ("the defendants to this count"), the proposed pleading fails to allege with particularity the role the remaining members of the Ramirez Enterprise played in the alleged mail or wire fraud.

The proposed amended complaint is also problematic because it does not allege facts establishing "longevity sufficient to permit" its members "to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.  In fact, the proposed pleading implies that some of its member entities have dissolved.  *See, e.g.,* Doc. [18-1] at ¶ 7 ("[JR Chemical, Inc.] is a successor in interest to Jose Ramirez, Ph.D., LLC, DFR Services, LLC, and JR Chem, LLC.").  Without allegations supporting that the Ramirez Enterprise has an ascertainable structure, Plaintiff has not sufficiently alleged an association-in-fact enterprise.[6]

Based on the foregoing, the Court has little difficulty concluding that Plaintiff's proposed

---

[6]Furthermore, Plaintiff's claimed enterprise fails the RICO "distinctness" requirement.  "A well-pled [section] 1962(c) claim requires the existence of two distinct entities: (1) a 'person'; and (2) and 'enterprise' that is not simply the same 'person' referred to by a different name." *Cont'l Fin. Co. v. Ledwith*, No. 08 cv 7272 (PAC), 2009 WL 1748875, at \*4 (S.D.N.Y. June 22, 2009) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)) (some internal quotation marks omitted); *see also BWP Media USA Inc*., 2014 WL 6077247, at \*12, n. 9 (quoting same).  "[T]he plain language and purpose of the statute contemplates that a *person* violates the statute by conducting an *enterprise* through a pattern of criminality." *Cruz*, 720 F.3d at 120; *see also BWP Media USA Inc*., 2014 WL 6077247, at \*12 (quoting same).  Because, as noted, Plaintiff has failed to plead particular allegations regarding the respective roles of the members of the Ramirez Enterprise, he has also failed to allege a RICO "person " distinct from the alleged "enterprise."

substantive civil RICO claim under 18 U.S.C. § 1962(c) (as asserted in Count Two) would not survive a motion to dismiss.  In the absence of a validly pled substantiative RICO claim, Plaintiff's claim under 18 U.S.C. § 1962(d) for RICO conspiracy (as asserted in Count One) would fail as well. *Jordan (Bermuda) Inv. Co*., *Ltd. v. Hunter Green Invs. Ltd*., 154 F. Supp. 2d 682, 685 (S.D.N.Y. 2001).

The Court next considers whether Count Three of the proposed amended complaint, which asserts a claim of patent infringement in violation of 35 U.S.C. § 271(a), would survive a motion to dismiss.

**D.**     **Patent Infringement in violation of 35 U.S.C. § 271(a)**

As discussed *infra*, the proposed amended complaint charges defendants Ramirez, Jr. Chem, LLC, and proposed defendant JR Chemical Inc., with direct patent infringement in violation of 35 U.S.C. § 271(a).  Section 271(a) states in its entirety:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therfor, infringes the patent.

35 U.S.C. § 271(a).

In considering whether a claimant has pled a claim for direct patent infringement that would survive a motion to dismiss, courts in this circuit have followed Federal Circuit precedent.  *See, e.g., 3D Sys*., *Inc*. v. *Formlabs*, *Inc*., No. 13 cv 7973, 2014 WL 1904365, at *2 (S.D.N.Y. May 12, 2014); *Gradient Enterprises*, *Inc*. v. *Skype Technologies S.A*., 848 F. Supp. 2d 404, 407 (W.D.N.Y. 2012). The Federal Circuit has held that "whether [a complaint] adequately plead[s] direct infringement is to be measured by the specificity required by [Fed. Rules. Civ. Proc.] Form 18." *In re Bill of Lading Transmission and Processing Sys*. *Patent Litig*., 681 F.3d 1323, 1334 (Fed. Cir. 2012); *see also*

22

*Loftex USA LLC v. Trident Ltd.*, No. 11 cv 9349, 2012 WL 5877427, at *3 (S.D.N.Y. Nov. 20, 2012)

(stating that "Official Form 18 in the Appendix of Forms to the Federal Rules of Civil Procedure

. . . governs the pleading standards for a claim of direct patent infringement").

    In interpreting the requirements of Form 18 in *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354

(Fed. Cir. 2007), the Federal Circuit stated that a patent infringement claims includes only the

following elements:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns
> the patent; (3) a statement that defendant has been infringing the
> patent 'by making, selling, and using [the device] embodying the
> patent'; (4) a statement that the plaintiff has given the defendant
> notice of its infringement; and (5) demand for an injunction and
> damages.

*McZeal*, 501 F.3d at 1357.  These five elements, referred to hereafter as the "*McZeal* elements,"or

the Form 18 requirements, reflect the pleading examples provided in Form 18 itself.  *See* Fed. R.

Civ. P. Form 18.

    In recognizing Form 18 as the proper pleading standard for patent infringement claims, the

Federal Circuit has held that "to the extent any conflict exists between *Twombly* (and its progeny)

and the Forms regarding pleadings requirements, the Forms control."  *K Tech Telecommunications*,

*Inc.* v. *Time Warner Cable*, *Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013).  Therefore, "a proper use of

[Form 18] effectively immunizes a claimant from regarding the sufficiency of the pleading."  *K Tech*

*Telecommunications*, 714 F.3d at 1283; *see also In re Bill of Lading*, 681 F.3d at 1334 ("'the forms

in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules

contemplate'" (quoting Fed. R. Civ. P. 84)).  Compared to the somewhat closer degree of scrutiny

directed under *Iqbal* and *Twombly*, the Form 18 requirements suggest a more forgiving standard.

    In the case at bar, the proposed amended complaint includes an allegation of federal question

jurisdiction in satisfaction of the first *MczZeal* element, see doc. [18-1] at ¶¶ 1-2; however, it does fully meet the remaining pleading requirements under *McZeal*.

Plaintiff's allegations of direct patent infringement are entirely contained within ¶¶ 55, 56, 57, and 58 of his proposed amended complaint.  Doc. [18-1] at ¶¶ 55-58.  In ¶ 55, Plaintiff incorporates by reference "[p]aragraphs 1 through 43," which is that portion of the complaint that, *inter alia*, identifies the parties and recites the facts giving rise to this litigation. *Id.* at ¶ 55.  In ¶ 56, Plaintiff states that "[t]his count is brought against defendants Ramirez and JR Chem, LLC." *Id.* at ¶56.  Paragraph 57, the substance of the patent infringement allegation, states in its entirety:

> By reason of the aforementioned acts of the defendants to this count [Ramirez and JR. Chem, LLC], the plaintiff, *an owner* of equitable title to patented and/or patentable chemical technology inventions, including but not necessarily limited to those set forth in Exhibit A, has been *fraudulently induced to part with the title to his inventions*.

*Id.* at ¶ 57 (emphasis added).  Plaintiff concludes the allegation in paragraph 58, stating: "The aforementioned conduct of the defendants to this count constitutes patent infringement in violation of 35 [U.S.C.] § 271(a)." *Id.* at ¶ 58.

As noted earlier, the second *McZeal* element requires a statement indicating that a plaintiff has (a) an ownership interest in (b) "the patent." *McZeal*, 501 F.3d at 1357.  Plaintiff's allegations fail to establish either element.  With respect to the ownership element, Plaintiff alleges in the first part of the sentence containing the crux of the allegation that he is "an owner of equitable title to patented and/or chemical technology inventions," but states in the second part of the sentence that he has been "fraudulently induced to part with the title to his inventions."  One wonders how Plaintiff may own  "patented and/or patentable chemical technology" having been fraudulently induced to part title with them.

The example statement offered in Form 18 regarding the requirement that plaintiff state he"owns the patent"contemplates *ongoing* ownership of the patent.   That example states in its entirety:

> 2. On *date*, United States Letters Patent No. _____ were issued to the plaintiff for an invention in an *electric motor*.   The plaintiff owned the patent throughout the period of the defendant's infringing acts *and still owns the patent*.

Fed. Rules. Civ. Proc. Form 18. (some emphasis added).   The last five words of the example are emphasized to illustrate the requirement, not met here, of present ownership.

The pleading deficiency in this respect fails to meet even the more relaxed pleading standard contemplated in *McZeal* and its progeny.   That standard forgives a pleading that would fail under *Twombly* and *Iqbal only if* the claimant has made *proper use* of the form.   *K Tech Telecommunications*, 714 F.3d at 1283 ("*proper use* of a form contained in the Appendix of Forms effectively immunizes a claimant from attack regarding the sufficiency of the pleading") (internal quotation marks omitted; emphasis added).   In defending the use of the Forms as an adequate pleading standard, the Federal Circuit in *McZeal* stated "[i]t logically follows that a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal* 501 F.3d at 1357 (citing *Twombly*, 550 U.S. at 555, n.10).   But where, as here, the form has not been properly followed, the defendant is not provided notice of what he must defend.   Plaintiff's allegations, for example, that he simultaneously owns, and yet not longer owns, certain chemical technology, does not provide defendants with notice as to whether they must defend a claim of direct infringement under 35 U.S.C. § 271(a) (which implies ownership of a patent), or alternatively, a claim of infringement by inducement in violation of 35 U.S.C. § 271(b) (which suggests the claimant has been fraudulently induced to part title with the patent).

Plaintiff's pleading with respect to the second *McZeal* element is problematic elsewhere. The element requires in that respect not only a claim of ownership, but a statement reflecting ownership interest in the "the patent," that is, "the patent" contemplated in the third *McZeal* element that "defendant has been infringing." The Form 18 example accounts for this requirement as well. *See* Form 18 ("On date, United States Letters *Patent No.* _____ were issued to the plaintiff for an invention in an electric motor.") (emphasis added and omitted). Plaintiff neither mentions a patented technology by name nor number; rather, directs the reader to Exhibit A, which includes two schedules listing chemical inventions, and the date on which patent applications for each chemical invention was filed. *See* Doc. [18-1], Ex. A. The second *McZeal* element requires one to state the *patent* he owns, not ownership of a *patent application*. That requirement is consistent with the plain text of 35 U.S.C. § 271(a), which, prescribes infringement of "patented inventions." It does not contemplate a cause action for infringement of inventions for which patent applications have been filed and not granted.

In the absence of clear indication that Plaintiff owns any single patent listed in the Exhibit A schedules, the reader  may  happen upon Exhibit B, which is titled "schedule of intellectual property." *See* Doc. [18-1], Ex. B. Crucially, one may *only* happen upon Exhibit B by chance, since Count Three does not direct the reader there, or otherwise incorporate Exhibit B by reference. Consequently, and in the absence of any other denotation of ownership in Exhibit A, one wonders if Plaintiff even claims to own the chemical technologies listed therein. There is another problem with Exhibit B. Like Exhibit A, it fails to delineate between patents and patent applications. The heading of a critical column is titled "Patent or Application no." *Id.* Although numbers are contained in the rows below that column, along with a reference number and description of the

chemical technology, it is impossible to tell whether the numbers refer to patents, or patent applications.

Even assuming that Exhibits A and B identify *patents* and not patent *application*s, thus pulling the pleading within the requirements of 35 U.S.C. § 271(a), the pleading would still be deficient because it does not notice Defendants as to which patents Plaintiff claims *to own*, as opposed to which patents in respect of which Plaintiff claims he has been *fraudulently induced to part title*. The shortcoming is problematic for defendants, who by virtue of Plaintiff's vague pleading, would be required to guess which patents Plaintiff claims he owns, and which he claims have been taken from him. As noted earlier, the distinction implies separate causes of actions and thus separates strategies of defense. The Court therefore concludes that Plaintiff has failed to state ownership of a patent as prescribed in the second requirement of Form 18.

Likewise, because Plaintiff has failed to properly plead that he is the current owner of a patent, he has also failed to satisfy the third *McZeal* element, which requires "a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent.'" No statement parroting that language is present in the proposed pleading, and certainly the requirement cannot be met where, as here, Plaintiff has failed to state clearly he owns "the patent." *McZeal*, 501 F.3d at 1357. Nor can the Court conclude that this requirement is satisfied by Plaintiff's allegation that "[t]he aforementioned conduct of the defendants . . . constitutes patent infringement." Doc. [18-1] at ¶ 58. At best, that statement is a "conclusory allegation[]" which leaves the defendants tasked with answering that allegation "little idea where to begin." *Twombly*, 550 U.S. at 564, n.10.

The proposed amended complaint is also deficient because it does not include "a statement

that the plaintiff has given the defendant of notice of its infringement." *McZeal*, 501 F.3d at 1357. Failure to include this statement has been grounds for dismissal even though "notice" is not a formal requirement of 35 U.S.C. § 271(a). *See*, *e.g.*, *Infonow Corp. v. Zyme Solutions*, *Inc.*, No. 12 cv 03255 (MSK) (MEH), 2013 WL 7088306, at *6 (D. Colo. Apr. 29, 2013); *Best Med. Int'l*, *Inc. v. Accuray*, *Inc.*, No. 2:10 cv 1043, 2010 WL 5053919, at *5 (W.D.Pa. Dec. 2, 2010).

Also, the pleading does not include, as contemplated in the fifth Form 18 requirement, a demand for "a preliminary and final injunction against the continuing infringement."[7] F.R.C.P. Form 18; *see also McZeal*, 501 F.3d at 1357.

Neither notice to defendants of the infringement, nor a request for an injunction against the infringement, are elements of a claim for patent infringement under 35 U.S.C. § 271(a). Therefore, one may fairly argue that those elements of Form 18 are not necessary to state a claim of patent infringement even in spite of the Federal Circuit's holdings in *McZeal* and related cases, which expressly prescribe those pleading requirements. *See*, *e.g.*, *W.L. Gore & Assoc. v. Medtronic USA*, *Inc.*, 778 F. Supp. 2d 667, 677 (E.D. Va. 2011) (concluding that pre-suit notice does not warrant dismissal under Rule 12(b)(6) because notice affects only damages and is not a required element of a patent claim). The Court, however, need not resolve whether failure to meet the fourth or fifth requirements of Form 18 are always grounds for dismissal since the pleading is deficient in other

---

[7]The proposed amended complaint demands certain injunctive relief not related to the *ongoing* infringement of patents, including a demand for a "temporary restraining order enjoining defendants . . . from . . . [f]iling *additional* patent applications." Doc. [18-1], p. 28, ¶ 7 (emphasis added). It also seeks garnishment of certain accounts that may contain payments owed to Plaintiff, and seeks to enjoin defendants and other entities from "disbursing, converting, spending, removing or otherwise disposing of any monies" received from the sale or licensing of chemical technologies. *Id.* p. 28-30. It does not, however, demand an injunction against the "continuing infringement" of patents owned by Plaintiff.

respects.  It suffices to stay that Plaintiff's failure to put Defendants on notice of the infringement, or even to request an injunction against the infringement, is not in keeping with one who claims to own a patent another is infringing.   The Court therefore concludes that Plaintiff's proposed claim of patent infringement in violation of 35 U.S.C. § 271(a) would not survive a motion to dismiss.

Finally, the Court turns to Plaintiff's allegation of infringement by inducement, which seems implied in Count Three of the proposed amended complaint, notwithstanding the absence of an accompanying citation to the relevant statute, 35 U.S.C. 271(b).   Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  "It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'"  *In re Bill of Lading*, 681 F.3d at 1333 (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) (citation omitted)); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed.Cir.2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement"); *Joy Techs., Inc.* v. *Flakt, Inc.*, 6 F.3d 770, 774 (Fed.Cir.1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.").   Because the Court has concluded that Plaintiff has failed to plead properly a claim of direct infringement in violation of 35 U.S.C. § 271(a), the Court must also conclude that Plaintiff has not properly pled a claim of indirect inducement in violation of 35 U.S.C. § 271(b), since the former is an element of the latter.

## III.  CONCLUSION

A motion to amend a complaint must be denied if the proposed pleading fails to state a claim upon which relief can be granted.   No such claim is stated here.   The Court will therefore deny

Plaintiff's motion to amend his complaint, but will do so without prejudice to his right to replead the federal claims to include factual allegations which would, if proven, constitute viable federal claims. Granting leave to replead is consistent with the liberal amendment policy of Rule 15(a), and the Court adopts it in this case, notwithstanding the prior judgment dismissing the action.  In making any additional factual allegations, Plaintiff must be guided by the strictures of Rule 11, Fed. R. Civ. P.

As the Court noted at the outset of this Ruling, this case was dismissed on August 5, 2013, for lack of subject matter jurisdiction.  Nothing has happened in this case since judgment entered, or has been altered in the foregoing discussion, which has invested this Court with subject matter jurisdiction over Plaintiff's claims, including his pending motion for prejudgment attachment (Doc. #25).  It should be kept in mind that no ruling by this Court with respect to federal subject matter jurisdiction questions is, or could be, determinative in any way of the merits of Plaintiff's state law claims.  Plaintiff is free, as he has always been, to assert those claims in a Connecticut state court.

The Court resolves the pending motions as follows:

1.   Plaintiff's motion to amend his complaint (Doc. #18) is DENIED, WITHOUT PREJUDICE to his right to replead, by motion not later than **January 6, 2015**, the federal claims sought to be asserted in the proposed amended complaint.

2.   Plaintiff's motion for prejudgment attachment (Doc. #25) is DENIED, WITHOUT PREJUDICE to any subsequent motion Plaintiff may make consistent with this Ruling.

The foregoing is SO ORDERED.

Dated:   New Haven, Connecticut
         December 1, 2014

/s/ *Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States Judge